UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| N.K., ppa Cherry Kelly, & CHERRY KELLY,<br><br>          Plaintiffs,<br>   v.<br><br>MARQUIS MORRISON, TROY WINFREY, CITY OF NEW HAVEN, REGINALD MAYO, NEW HAVEN BOARD OF EDUCATION, MICHAEL CROCCO, & YOLANDA JONE-GENERETTE,<br><br>          Defendants. | 3:11 - CV - 1977 (CSH)<br><br><br><br>SEPTEMBER 5, 2014 |

### RULING ON QUESTION OF SUBJECT MATTER JURISDICTION

**HAIGHT, Senior District Judge:**

#### I.   INTRODUCTION

In two previous memoranda and orders, Doc. 48 (2014 WL 132015) and Doc. 56 (unreported), familiarity with which is assumed, the Court raised *sua sponte* the question whether subject matter jurisdiction over the captioned case exists in this Court. The answer depends principally upon whether the Amended Complaint [Doc. 24] sufficiently alleges that one of the Defendants, Marquis Morrison, a City of New Haven police officer, was acting under color of state law when the Police Department motorcycle Morrison was operating struck and injured N.K., the minor Plaintiff. The Court directed briefing on that issue. Briefs have been submitted by counsel for Plaintiffs, for the New Haven municipal Defendants, and for Defendant Troy Winfrey. Defendant Morrison has neither appeared in the action nor retained counsel. This Ruling decides

1

the question of subject matter jurisdiction *vel non*.

## II. DISCUSSION

Plaintiff's first claim is that Police Officer Morrison's conduct, which injured the minor Plaintiff, violated 42 U.S.C. § 1983.  "In order to state a claim under § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or federal law."  *Servin v. Anderson*, No. 3:11-cv-539, 2012 WL 171330, at *2 (D.Conn. Jan. 20, 2012) (Kravitz, *J.*).

The case at bar focuses upon the first of those two questions: Was Morrison acting under color of state law when the motorcycle he was driving struck and injured the Plaintiff?  To answer that question, the Court looks to the Amended Complaint and considers whether, from the circumstances pleaded, the element that Morrison was acting under color of state law can "reasonably be alleged," or whether, in contrast, "the complaint failed to allege sufficient facts to state a plausible claim" that Morrison was acting under color of state law.  *Jabbar v. Fischer*, 683 F.3d 54, 58, 59 (2d Cir. 2012) (on the plausibility criterion, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The case in this regard turns upon Count One of the Amended Complaint, which is the only count purporting to charge a violation of the Constitution or federal law.  Morrison is the sole Defendant named in Count One.  That count alleges that on April 30, 2010, "during the evening hours, the minor plaintiff NK, a student at Barnard Environmental Studies Magnet School, had just left a school-sponsored dance at said City public school and was walking across the street at the intersection of Sherman Avenue and North Frontage Road" in New Haven.  Doc. 24, Count One,

¶ 6. At that date, time and location, Police Officer Morrison "was riding a motorcycle at a high rate of speed, and was engaging in racing his said motorcycle with a civilian, Troy Winfrey, who was in turn racing on a motorcycle." *Id.,* ¶ 7. Morrison "encouraged and participated in a joint venture with said civilian of unsafe, unreasonable competitive motorcycle racing on a public highway and said defendant also failed to prevent or restrain said civilian Troy Winfrey from engaging in said dangerous and unlawful racing." *Id.,* ¶ 8. Having alleged these circumstances in Count One at ¶¶ 6-8, the Amended Complaint then alleges at ¶ 9: "*As a result of said conduct*, the defendant City of New Haven Police Officer Marquis Morrison *intentionally* struck the minor plaintiff with his motorcycle while she was walking across the said street, and then [Morrison] failed to stop and failed to notify anyone of the collision." (emphases added).

If by use of the adverb "intentionally" in ¶ 9 counsel for Plaintiffs mean to suggest that Morrison observed N.K. crossing the street, targeted her, *intended* to strike her down, aimed his motorcycle accordingly, and *did* strike N.K. down on purpose, that disturbing inference cannot reasonably or plausibly be drawn from the conduct described in the immediately preceding ¶¶ 6-8, which allege solely that Morrison was engaging in racing motorcycles with a civilian on this public street when his motorcycle struck N.K. while she was crossing the street. Morrison raced motorcycles with Winfrey *intentionally* and struck N.K. *accidentally*, which is to say, *negligently*. That is the fair reading of the Amended Complaint, which the Court is required to make in testing the viability of Plaintiffs' § 1983 claim.[1]  There is no allegation in the pleading which would support

---

[1] "The Court of Appeals understood the claim to be one of deliberate indifference to Lewis's survival, which it treated as equivalent to one of reckless disregard for life. We agree with this reading of respondent's allegations, but consequently part company from the Court of Appeals, which found them sufficient to state a substantive due process claim . . . " *County of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998).

a reasonable inference that Morrison intended to strike the pedestrian N.K. with his motorcycle.

This is not to denigrate the wrongful nature of Morrison's conduct. But one cannot escape the reality that the Amended Complaint, as sensibly read and stripped of conclusory rhetoric detached from the well-pleaded facts, asserts in substance that at the time of the injury Morrison was engaged in the strictly private venture of racing his police motorcycle with a civilian cyclist: conduct on Morrison's part which was not occasioned by, did not further, had nothing to do with any police activity or purpose, with respect to the minor Plaintiff, or to anyone or anything of a public nature. Count One charges that Morrison "engaged in conduct which was shocking to the conscience," ¶ 10, but if one disregards the adverb "intentionally" (which for the reasons stated I am bound to do), Plaintiffs' claim is *au fond* one of negligence, a characterization echoed by Plaintiffs' counsel, who when required by the Rule 26(f) Statement [Doc. 35] at 3 to give a "Brief Description of [the] Case" listed under "Claims of Plaintiffs": "Negligence in operation of motor vehicles (motorcycles) by Troy Winfrey and Marquis Morrison."

While the consequences of this incident to the minor Plaintiff and her mother are tragic, I am constrained by Supreme Court and Second Circuit authority to hold that the Amended Complaint does not sufficiently allege that at the relevant time Morrison, albeit a New Haven police officer, was acting under color of state law. This is a much-litigated issue, but the boundaries are clear enough. In *Pitchell v. Callan*, 13 F.3d 545 (2d Cir. 1994), where a wounded civilian sued police officers, the Second Circuit said:

> Courts have had frequent occasion to interpret the term "color of law" for the purposes of section 1983 actions, and it is by now axiomatic that "under 'color' of law" means under 'pretense' of law" and that acts of officers in the ambit of their personal pursuits are plainly excluded.
> . . .

4

> . . . Unlike in a negligence action, the focus of inquiry in the instant case is not on the standard of care used by the officers but rather on whether there was an abuse or misuse of a power conferred upon them by state authority.

13 F.3d at 547-48, 549 (citation and some internal quotation marks omitted).

The Second Circuit reiterated that principle more recently in *United States v. Temple*:

> Color of law and pretense of law are synonymous, and acts of officers engaged in personal pursuits are not included. Although no bright line separates actions taken under color of law from personal pursuits, the relevant question in determining whether an action was taken under color of law is not whether the action was part of the defendant's official duties but, rather, whether the action was made possible only because the wrongdoer is clothed with the authority of law. One who abuses a position given to him or her by the government is said to act under color of law. Such is the case, for example, where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department.

447 F.3d 130, 138 (2d Cir. 2006) (citations and internal quotation marks omitted), *cert. denied*, 549 U.S. 997 (2006).

In oft-cited earlier cases, the Supreme Court has said:

> Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.

*United States v. Classic*, 313 U.S. 299, 326 (1941).

> We are not dealing here with a case where an officer not authorized to act nevertheless takes action. Here the state officers were authorized to make an arrest and to take such steps as were necessary to make the arrest effective. They acted without authority only in the sense that they used excessive force in making the arrest effective. It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers *who undertake to perform their official duties* are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only

>           action which the State in fact authorized, the words 'under color of
>           any law' were hardly apt words to express the idea.

*Screws v. United States*, 325 U.S. 91, 111 (1945) (emphasis added).

This point need not be further elaborated. I think it plain that when Morrison participated in a motorcycle race with the civilian Winfrey and struck the civilian N.K. during its course, Morrison was not acting "under the color of state law" as that phrase is defined by the cited cases. The Amended Complaint does not allege whether at this time Morrison was in uniform or on duty. It makes no difference. Morrison was acting "under color of state law" if, *but only if*, he was among officers who by their acts "undertake to perform their official duties," the requisite element identified by the Supreme Court in *Screws*. In the case at bar, precisely the reverse is true. Whatever police duties Morrison may have had at the intersection of Sherman Avenue and North Frontage Road on that April evening, he abandoned them to engage in a motorcycle race with Winfrey, a civilian. Morrison was not attempting to apprehend Winfrey for a suspected crime; he was just racing him. If Morrison won the race, law enforcement would not be advanced, the public good would not be served, Morrison's satisfaction would be entirely personal – this was a "private pursuit" in every sense of those words. The cited cases make clear that Morrison's acts, reprehensible as they were, cannot be characterized as taken "under color of state law."

To hold otherwise would, under the guise of a § 1983 action, turn the Fourteenth Amendment into "a font of tort law," a proposition rejected in *Paul v Davis*, 424 U.S. 693, 699-701 (1976). In the Court's memorandum directing further briefing, 2104 WL 132015, I cited and quoted from *Paul* and a number of other Supreme Court decisions, all of which, it is fair to say, pointed in the direction of dismissing these Plaintiffs' § 1983 claim. The Court raised the jurisdictional question *sua sponte*

because it was my duty to do so, the Defendants having remained silent on the point, and it was fair to give counsel the opportunity to respond. In their briefs, those Defendants represented by counsel express the revelation that the Amended Complaint does not state a viable federal claim (Morrison has not appeared in the case).

Counsel for Plaintiffs have filed a responsive brief [Doc. 57] which does not salvage their § 1983 claim. The brief begins its discussion of the case at bar with the statement that "allegations are made that Officer Morrison's superiors knew of Morrison's continued motorcycle speeding on North Frontage Road and habitually ignored same." Doc. 57 at 2. The brief does not cite to any such allegations in the Amended Complaint, and there are none. From that problematic introduction, Plaintiffs' brief offers these theories:

* "It is *possible* that Morrison knew, under these facts, or believed, that he was clothed with the authority of the State and, as alleged, believed that his position as a New Haven police officer 'validated' what he was doing." Brief at 2 (emphasis added).

* "Additionally, it is also *possible* that Morrison's motorcycle activities on North Frontage Road were intended by Morrison [and even, *perhaps* by his supervisors] as general law enforcement public safety duties, in that he was monitoring certain persons or motorcycle gang members in the area, or engaging in investigatory or community-based policing techniques or activities by 'befriending' certain members of, or a segment of, the community." *Id.* at 2-3 (emphasis added).

* "Additionally, Officer Morrison's driving of his motorcycle at the pedestrians to 'scare them' *might* actually constitute a poorly judged attempt to disperse a crowd of young people congregating in and/or near the street or to break up what looked like wrongful activity." *Id.* at 3 (emphasis added).

Plaintiffs' brief concludes that these suggested scenarios support the Plaintiffs' federal claim because: "Liability can obtain under § 1983 'where an off-duty officer invokes the real or apparent power of the police department or performs duties prescribed generally for police officers.' *Wahhab v. City of New York*, 386 F.Supp.2d 277 (S.D.N.Y. 2005)." Brief at 3. The brief also cites for this proposition *Pitchell v. Callan, supra*. *Id.*

There is no substance to this salvage effort. The emphasized words in the Brief's discussion demonstrate the wholly speculative and conjectural bases for these scenarios. There are no well-pleaded factual allegations in the Amended Complaint to support any of them, nor does counsel's recitation of Plaintiffs' claims in the Rule 26(f) Statement contain a whiff of any of them. Plaintiffs' responsive brief to the Court inquiry is a transparent effort to bring this case within Judge Kravitz's opinion in *Servin v. Anderson*, 2012 WL 171330, and the Second Circuit's decision in *Pena v. DePrisco*, 482 F.3d 98 (2d Cir. 2005), upon which Plaintiffs rely in their brief. Both cases favored § 1983 plaintiffs, but neither bears a meaningful resemblance to the case at bar.

In *Servin*, two police officers, each driving a police cruiser, had been dispatched from headquarters to an incident, were speeding on their return, and shot through red and blinking yellow traffic lights without slowing or taking precautionary measures. One cruiser struck a civilian car and killed its occupant. Plaintiffs sued the police officer-driver, and also the police chief, the complaint alleging that "Chief Mello failed to appropriately supervise his officers' actions and that the City of Milford had a policy or practice of improperly or inadequately training police officers in the appropriate operation of their cruisers," with the result that "police officers routinely drive negligently and recklessly in both emergency and non-emergency situations." 2012 WL 171330, at *1. Although he regarded the case as a close one, Judge Kravitz concluded the "Plaintiffs have

adequately alleged a failure-to-train case for the purpose of surviving Defendants' motion to dismiss." *Id.*, at *8.

In *Pena*, an intoxicated off-duty police officer drove his car through several red lights and killed three pedestrians. The complaint alleged that supervisory police personnel "communicated to Grey [the officer in question] that he was free to drink to excess and drive in that condition." 432 F.3d at 110. That gave rise to potential § 1983 liability because, the Second Circuit reasoned, "the alleged behavior of the pre-accident individual defendants here, over an extended period of time and in the face of action that presented obvious risk of severe consequences and extreme danger, falls within the realm of behavior that 'can properly be characterized, as . . . conscience shocking, in a constitutional sense." *Id.* at 114 (quoting *Lewis*, 523 U.S. at 847).

These cases offer no guidance to the case at bar and the allegations upon which Plaintiffs' § 1983 claim depends. The courts in *Servin* and *Pena* allowed complaints to survive motions to dismiss because each complaint alleged specific conduct on the part of police department supervisors sufficient to sustain a viable § 1983 claim. Nothing in the Amended Complaint at bar performs that function.

After careful consideration of the pleading in this case, the Court concludes that Morrison's complained-of actions were not taken under color of state law. It follows that Count One of the Amended Complaint will be dismissed with prejudice for failure to state a claim under 42 U.S.C. § 1983.

In the exercise of my discretion, I decline to exercise 28 U.S.C. § 1367(a) jurisdiction over the remaining state law claims. These claims will be dismissed without prejudice. That is the practice preferred by appellate courts with respect to state law claims when a district court dismisses

the sole federal claim upon which that court's original jurisdiction depends.  *See, e.g., Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994).

### III.  CONCLUSION

For the foregoing reasons, Count One of the Amended Complaint is DISMISSED WITH PREJUDICE.  The remaining Counts, Two through Fifteen, are DISMISSED WITHOUT PREJUDICE.  The Clerk is directed to close the file.

It is SO ORDERED.

Dated:  New Haven, Connecticut
        September 5, 2014

                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge